IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LINDSAY ACRE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACT. NO. 2:14cv211-CSC |
| | ) |
| JASON CHAMBERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Lindsey Acre and Robert Morris, as the personal representative of the Estate of Jeremy Acre, allege that the defendant police officers, Officers Cox and Chambers, used excessive force when they entered the Acre home without legal justification on March 19, 2013, and shot and killed Jeremy Acre. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This case is now pending before the court on the plaintiffs' motion for sanctions for spoliation of evidence (doc. # 60) filed on December 22, 2014. The court has reviewed the arguments in support of and in opposition to the spoliation issue and finds that the request for sanctions is due to be denied.

For the purpose of the spoliation motion, the pertinent facts[1] are as follows. At

---

[1] For the purpose of this motion, the court takes the facts as alleged by the plaintiffs as true and construes them in the light most favorable to them. The court makes no factual findings, and the actual

approximately 11:00 p.m. on March 19, 2013, defendants Chambers and Cox arrived at the home of Jeremy and Lindsay Acre. According to the plaintiffs, the officers knocked on the front door but did not identify themselves as police officers.[2] Jeremy opened the door, armed with a handgun. He did not threaten the officers with the weapon. When the officers demanded Jeremy put down the gun, Jeremy attempted to close the door. The officers then forcibly entered the house. Because Jeremy refused to put down the handgun, defendant Cox deployed his taser on Jeremy. As he attempted to get up from the floor, defendant Chambers shot and killed Jeremy. The defendants assert that defendant Cox fired the taser before defendant Chambers shot Jeremy.

On March 22, 2013, a data download was obtained from Cox's taser. That download revealed that taser had been fired for five seconds at 23:08:11 on March 19, 2013. After the data was downloaded, the taser was returned to defendant Cox for continued use in his duties as a law enforcement officer.

On July 11, 2014, defendant Cox turned his taser over to Sergeant Marsh to be preserved as evidence. (Doc. # 63, Ex. 1). Sergeant Marsh "removed the battery to test the remaining life of the battery," and then stored the taser in an evidence bag in the Evidence Room at the Elmore County Sheriff's office. (*Id*. at 2, ¶¶ 3-5).

On December 18, 2014, the taser was removed from the Evidence Room for

---

facts may be different than those stated here.

[2] The officers contend that they were sent to the house by Lieutenant Zeigler to perform a "welfare check" at the residence.

inspection by plaintiffs' counsel. "During this process, it was discovered that the battery had been removed from the taser, thereby disabling the internal clock in the taser." (Doc. # 60 at 2.) Nonetheless, a second data download was obtained from the taser which matched the initial data download indicating that the taser had been fired at 11:08:11 p.m. on March 19, 2013.

Because the battery disabled in the internal clock, the plaintiffs argue that they are now unable to determine "to what degree the taser clock was accurate on March 22, 2013." (*Id.*) The accuracy of the clock becomes relevant because, according to the plaintiffs, a call log from the Elmore County Sheriff's Department indicates that defendant Chambers reported shots fired at 10:58:43 p.m. (Doc. # 60 at 1-2). Consequently, the plaintiffs seek to establish that the taser was discharged after Chambers shot and killed Cox.

It is the plaintiffs' position that because the defendants did not secure the taser in a manner that maintained the internal clock, the defendants should be prevented "from contending or offering any evidence in this case, that the taser at issue . . . was fired at any time relevant to this case other than 11:08:11 p.m. on March 19, 2013." (Doc. # 60 at 2).

"Spoliation refers to the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F.Appx. 298, 301 (11th Cir. 2009). The court applies federal law in this case "because spoliation sanctions constitute an evidentiary matter." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Spoliation

sanctions are "intended to prevent unfair *prejudice* to litigants and to insure the integrity of the discovery process." *United States v. McCray*, 345 F.Appx. 498, 501 (11th Cir. 2009) (emphasis in original).  It is not sufficient for the plaintiffs to merely show that the evidence is relevant, rather they must demonstrate that the evidence is crucial to proving their case. *Wandner v. American Airlines*, — F.Supp.3d —, 2015 WL 145019, * 9 (S.D. Fla. 2015).

In essence, the plaintiffs seek to have the court draw an adverse inference from the defendants' failure to preserve the internal clock in the taser.  "In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 .F3d 929, 931 (11th Cir. 1997). *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); *Silver v. Countrywide Home Loans, Inc.,* 483 F.Appx. 568, 572 (11th Cir. 2012).  "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Mann*, 588 F.3d at 1310. *See also Bashir*, 119 F.3d at 931 ("'Mere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'")

Although shortsighted, the defendants' decision to initially place the taser back into service in March 2013 and then to remove the battery in July 2014 for storage in the evidence room does not rise to the level of bad faith.  At best, it constitutes negligence, and in this circuit, even gross negligence is insufficient to justify an adverse inference.  *See Wandner,*

2015 WL 145019 at *11.  There is no evidence before it from which the court could conclude that the defendants removed the battery on the taser for the purpose of losing or destroying the internal clock.  *See Bashir*, 119 F.3d at 931 ("no probative evidence in this case to indicate [defendants] purposely lost or destroyed the relevant [evidence].")

Finally, the plaintiffs' claim of severe prejudice is unpersuasive. It is undisputed that plaintiff Lindsey Acre and defendants Cox and Chambers were present at the residence on the night Jeremy was shot, and can testify about the series of events.  Nothing in the record indicates that they will be unavailable to testify at trial.  Furthermore, in support of and in opposition to the spoliation motions, the parties have presented expert testimony regarding "clock drift."  There is no evidence before the court to suggest that the experts will be unavailable to testify at trial.

Relying on *Flury v.Daimler Chrysler Corp.*, 437 F.3d 939 (11th Cir. 2005), the plaintiffs argue that a demonstration of bad faith is only required "when dismissal is the requested sanction." (Doc. # 73 at 2).  The plaintiffs' position is unavailing.  First, the court in *Flury*, *supra*, was a panel decision and did not overrule *Bashir*, *supra*, which is a prior panel decision.  This court is bound by the Eleventh Circuit's earlier holding, which requires a showing of bad faith. *See Clark v. Housing Auth. of Alma*, 971 F.2d 723, 726 n. 4 (11th Cir. 1992) ("Where circuit authority is in conflict, the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc.").  More importantly, in cases following *Flury*, *supra*, the Eleventh Circuit has specifically required a showing of

bad faith before an adverse inference instruction is given as a sanction for spoliation. *See Mann*, 588 F.3d at 1310 ("an adverse inference is drawn . . . *only* when the absence of that evidence is predicated on bad faith."); *Cox v. Target Corp.*, 351 F.Appx. 381, 383 (11th Cir. 2009) ("[a] jury instruction on spoliation of evidence is required "only when the absence of that evidence is predicated on bad faith."")

 Accordingly, for the reasons as stated and for good cause, it is

 ORDERED that the motion for sanctions for spoliation of evidence (doc. # 60) be and is hereby DENIED.

 Done this 17th day of February, 2015.

        /s/Charles S. Coody
        CHARLES S. COODY
        UNITED STATES MAGISTRATE JUDGE